T.C. Summary Opinion 2005-31


UNITED STATES TAX COURT


THOMAS E. ROBERTS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12473-03S.          Filed March 24, 2005.


Thomas E. Roberts, pro se.

Catherine S. Tyson, for respondent.


CARLUZZO, Special Trial Judge:  This section 6330(d) case was heard pursuant to the provisions of section 7463.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

_____

[1]  Section references are to the Internal Revenue Code of 1986, as amended.  Rule references are to the Tax Court Rules of Practice and Procedure.

Background

Some of the facts have been stipulated and are so found.  At the time the petition was filed, petitioner resided in Horseshoe Bay, Texas.

In 1985, petitioner incorporated Tom Roberts Ford/Mercury, Inc. (the corporation), which owned and operated a new car dealership located in Madisonville, Texas.  At all times relevant, petitioner served as president of the corporation.

Shortly after its incorporation, the corporation was in need of operating capital.  As president of the corporation, petitioner obtained a loan from First Madisonville National Bank (First Madisonville) on behalf of the corporation.  The note evidencing the loan with First Madisonville was made in the name of the corporation and was signed by corporate officers, including petitioner as president of the corporation.  The note was for a fixed principal amount and various assets of the corporation were pledged as security.

As president of the corporation, petitioner executed additional loan notes with First Madisonville, including a revolving credit loan.  All of the proceeds from the loans executed on behalf of the corporation went to the corporation.  Per bank policy, petitioner, as a "principal" of the corporation, was a guarantor of the corporation's loans.

From time to time the corporate loans were renewed, which renewals were evidenced by the execution of new notes. At first, these renewal notes were signed on behalf of the corporation by petitioner in his capacity as a corporate officer. With respect to some renewal loans, petitioner pledged his personal assets as security. At or about the same time, petitioner also executed loan notes and renewal notes with First Madisonville in his individual capacity.

On June 20, 1988, the corporation forfeited its corporate charter. On September 23, 1988, the corporation filed a bankruptcy petition in the Southern District of Texas, Houston Division.

In or around 1990, First Madisonville requested that petitioner sign a renewal loan note for the corporation's prior loans (the final renewal note). The final renewal note (approximately $40,000, exclusive of accrued interest) is signed by petitioner in his individual capacity, not in his capacity as an officer of the corporation.

In 1997, petitioner was having significant financial problems. In addition to the corporation, petitioner had a financial interest in another automobile dealership that also went out of business. According to petitioner, as of that time "all of * * * [his] money was gone."

First Madisonville made unsuccessful attempts to collect on the final renewal note. Efforts to foreclose on the security were frustrated by another creditor with priority with respect to the pledged assets. Consequently, the bank determined that it would not be financially worthwhile to pursue legal action against petitioner or the corporation.

In 1997, First Madisonville determined that the final renewal note was uncollectible and issued to petitioner a Form 1099-C, Cancellation of Debt, which reported discharge of indebtedness income of $51,792 for that year (the Form 1099-C income).

Petitioner filed a 1997 Form 1040, U.S. Individual Income Tax Return. Petitioner did not report the Form 1099-C income on that return. In a notice of deficiency dated October 20, 1999, respondent determined a deficiency in petitioner's 1997 Federal income tax. Among other adjustments made in the notice of deficiency, respondent increased petitioner's 1997 income by the amount of the Form 1099-C income. Petitioner did not petition this Court in response to that notice and the deficiency and related amounts were assessed in due course.

On October 24, 2001, respondent mailed to petitioner a final notice of intent to levy with respect to his outstanding 1997 Federal income tax liability.

On November 1, 2001, petitioner submitted a Form 12153, Request for a Collection Due Process Hearing, requesting a hearing under section 6330 with respect to the 1997 taxable year. On the form, petitioner stated, in part, that the Form 1099-C income should be charged to the corporation and any tax liability resulting from that income should be treated as the corporation's liability.

Following his request for an administrative hearing, in a February 22, 2002, telephone conversation petitioner informed respondent's Appeals officer that he would provide additional information with respect to the discharged debt.

On March 15, 2002, petitioner was contacted by an Appeals officer. Petitioner informed the Appeals officer that he was trying to obtain the supporting documentation with respect to the discharged debt. On April 18, 2002, the Appeals officer again spoke with petitioner and was told that petitioner had not been able to obtain the necessary information from First Madisonville.

After receiving no information from petitioner, the Appeals officer informed petitioner by letter that a hearing was scheduled for May 27, 2002. Petitioner canceled the meeting and rescheduled it for June 11, 2002. On June 10, 2002, petitioner canceled the second scheduled hearing.

On June 27, 2002, the Appeals officer held a telephone hearing with petitioner. During the hearing, petitioner informed the Appeals officer that he would submit an offer in compromise based on doubt as to collectibility by August 1, 2002. On August 1, 2002, petitioner notified the Appeals officer that he would need an additional 2 weeks to file the offer in compromise.

On August 27, 2002, the Appeals officer notified petitioner by letter that he had an additional 2 weeks to submit an offer in compromise.

On January 29, 2003, petitioner's case was transferred to a different Appeals officer. This Appeals officer determined that there had been no action by petitioner with respect to his offer in compromise.

On May 16, 2003, the Appeals officer notified petitioner that he had until June 9, 2003, to submit his offer in compromise. The Appeals officer provided petitioner with a Form 656, Offer in Compromise, and a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals.

On June 11, 2003, petitioner submitted to the Appeals officer a Form 656 based on doubt as to liability, and a Form 433-A. In the offer in compromise, petitioner stated that "This tax was a result of a bank charging off a loan they made to a

corporation." Petitioner did not provide any additional or supporting information with the offer in compromise.

On June 24, 2003, respondent requested additional information from petitioner with respect to his claim in the offer in compromise that the tax liability belonged to the corporation. Petitioner did not provide any additional information.

On July 24, 2003, respondent issued to petitioner a Notice Of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330. In the notice of determination, respondent determined, in part, that: (1) All legal and procedural requirements had been met; (2) petitioner's offer in compromise was properly rejected because petitioner did not provide any additional information to support his position that the discharged debt belonged to the corporation; and (3) the proposed collection action was no more intrusive than necessary.

Discussion

Section 6330(a) provides that no levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of the right to a hearing before the levy is made. If the taxpayer requests a hearing, a hearing shall be held by the Internal Revenue Service Office of Appeals. Sec. 6330(b)(1). At the hearing, a taxpayer may raise any relevant issue, including appropriate spousal defenses;

challenges to the appropriateness of the collection action; and collection alternatives, such as an offer in compromise. Sec. 6330(c)(2)(A); Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. 176, 180 (2000). Additionally, at the hearing, a taxpayer may contest the existence and amount of the underlying tax liability if the taxpayer did not receive a notice of deficiency for the tax in question or did not otherwise have an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B); Sego v. Commissioner, supra; Goza v. Commissioner, supra at 182-183.

Following a hearing, the Appeals Office must make a determination whether the proposed levy action may proceed. In so doing, the Appeals Office is required to take into consideration the verification presented by the Secretary, the issues raised by the taxpayer, and whether the proposed levy action appropriately balances the need for efficient collection of taxes with the taxpayer's concerns that any collection action be no more intrusive than necessary. Sec. 6330(c)(3).

The taxpayer may petition the Tax Court or, depending upon the nature of the underlying tax, a Federal District Court for judicial review of the Appeals Office's determination. Sec. 6330(d). If the taxpayer files a timely petition for judicial review, the applicable standard of review depends on whether the underlying tax liability is at issue. Where the underlying tax

liability is properly at issue, the Court reviews any determination regarding the underlying tax liability de novo. Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 181-182. The Court reviews other administrative determinations regarding the proposed levy action for abuse of discretion. Sego v. Commissioner, supra.

Petitioner makes no claim that the Appeals officer failed to obtain verification that the requirements of any applicable law or administrative procedure have been met. See sec. 6330(c)(1). Instead, petitioner's challenge to respondent's determination raises issues almost exclusively related to the existence of his 1997 Federal income tax liability. See sec. 6330(c)(2)(B).[2]

Although a notice of deficiency was issued to petitioner for 1997, respondent concedes that petitioner did not receive that notice. Consequently, respondent does not dispute petitioner's right to challenge the existence or the amount of his 1997 Federal income tax liability in this proceeding.

After careful consideration of the evidence presented in this proceeding, we find that petitioner has failed to establish

---

[2] Sec. 6330(c)(2)(B) provides:

(B) Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

that the discharge of indebtedness income belongs to the corporation and not him. Specifically, petitioner failed to prove that the discharge of indebtedness income resulted exclusively from the cancellation of corporate indebtedness. Furthermore, other than petitioner's generalized statement that "all of * * * [his] money was gone" at the time, there is no evidence in the record that petitioner was insolvent. See sec. 108(a)(1)(B), (d)(3).[3]

Finally, we must consider whether it was an abuse of discretion for the Appeals Office to reject petitioner's offer in compromise. Accordingly, we review whether respondent's determination regarding the offer in compromise was arbitrary, capricious, or without sound basis in fact or law. Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Fowler v. Commissioner, T.C. Memo. 2004-163.

Upon review of the record, it is clear that the Appeals Office considered petitioner's offer in compromise. Petitioner was given several opportunities to provide additional information and documentation to support his assertion that the discharged debt properly belonged to the corporation. While petitioner continually made assurances to the Appeals Office that such

---

[3] While the record contains only outdated financial information, to the extent any inference can be drawn with respect to petitioner's financial condition the financial information does not suggest that petitioner was insolvent. For example, on petitioner's 1986 Federal tax return, he reported total income of $840,466. Additionally, on petitioner's "Statement of Financial Condition" as of Jan. 13, 1988, his "Assets in excess of Liabilities" were $5,478,025.

information would be forthcoming, no such supporting documentation was provided.  Accordingly, the Appeals Office only had petitioner's self-serving statements to support his contention.

We find that the Appeals Office considered petitioner's offer in compromise and, in light of his failure to provide supporting documentation, respondent's determination to reject petitioner's offer in compromise was not an abuse of discretion. Therefore, respondent's determination to proceed with collection is therefore sustained.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing and respondent's concession of an adjustment made in the notice of deficiency dated October 20, 1999,

Decision will be entered
under Rule 155.